IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| EVANSTON INSURANCE COMPANY, | § | |
| *Plaintiff*, | § | 5-17-CV-00798-FB-RBF |
| vs. | § | |
| JOHNNY D. GABRIEL, ROSALIE GABRIEL, GABRIEL REALTY PARTNERS, LTD., | § | |
| *Defendants*. | § | |

**AMENDED REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Fred Biery:**

Before the Court is the Motion to Dismiss, Abstain, or Stay filed by Defendants Johnny D. Gabriel, Rosalie Gabriel, and Gabriel Realty Partners, Ltd. *See* Dkt. No. 15. All pretrial matters in this case have been referred to the undersigned for disposition, pursuant to 28 U.S.C. § 636(b), Western District of Texas Local Rule CV-72, and Appendix C, *see* Dkt. No. 10. The Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332.

At issue is whether the Court must abstain and dismiss Plaintiff Evanston Insurance Company's Complaint or, assuming the Court is not required to abstain and dismiss, whether the Court should in its discretion abstain or stay this action pending resolution of a related state court proceeding. For the reasons discussed below, it is recommended that the Defendants' Motion, Dkt. No. 15, be **DENIED**. Abstention (and dismissal) is not required here, and neither discretionary abstention nor a stay is appropriate under the circumstances.

I.      **Background**

This insurance-coverage dispute arises out of an April 13, 2016 claim for hail damage to commercial property belonging to Defendants "John and Rosalee Gabriel d/b/a Gabriel Realty Partners, LTD" (collectively, the "Gabriels"), and insured through a commercial-property policy with Plaintiff Evanston Insurance Company. Compl. ¶¶ 9-11; *see also* policy attached as Ex. A to Compl. Shortly after the Gabriels tendered their claim under the policy, Evanston retained the services of an independent adjusting firm, Brush County Claims, as well as an engineering firm to assist with claim investigation. Compl. ¶¶ 12-14. Citing the adjustor's damage-repair estimate and engineer report, Evanston provided the Gabriels, on July 20, 2016, with an initial loss estimate of approximately $48,000. Ex. B to Resp.[1] In that correspondence, Evanston explained, "[i]f the above calculations are acceptable to your client please have them complete the first page of the proof of loss and have an authorized representative sign it before a notary public and return it to us at your earliest convenience." *Id.* The attached form, entitled "Sworn Statement in Proof of Loss," requests various types of information from an insured, including: (1) the time and origin of the loss; (2) who occupied the property at the time of the loss; (3) the actual cash value of the property; and (4) "the amount claimed" under the policy. According to this form, insureds are also instructed to certify that the loss did not occur by act of the insured, no attempt has been made to deceive Evanston, and "[a]ny other information that may be required will be furnished and considered a part of this proof." *Id.*

The Gabriels rejected Evanston's initial estimate, by letter dated August 18, 2016. Ex. C to Resp. In that letter, counsel informed Evanston that the estimate was "completely inadequate" and "contrary to investigations performed by [her] client's independent adjuster." *Id.* But she did not provide Evanston with a copy of this investigative information. On September 16, 2016,

---

[1] *See also* Affidavit of Anthony Dipietra (attached as Exhibit 2 to the Response), which authenticates Exhibits A-L to Evanston's Response.

using the Sworn Statement in Proof of Loss form previously provided by Evanston, the Gabriels claimed a total of $720,478.86 in losses under the policy. Ex. D to Resp. The Gabriels did not provide any supporting information or documentation to explain this claimed amount.

On September 29, 2016, Evanston "acknowledge[d] and accept[ed] the receipt of the Proof of Loss" but rejected the amount claimed. *Id.* Evanston instead revised its estimated loss to $56,724.94, based on a supplemental report from its adjuster, and it further provided the Gabriels with another blank proof-of-loss form "should [they] choose to submit a corrected or additional proof of loss to reflect the claim being presented." *Id.* Evanston then mailed the Gabriels a check for the revised amount and closed the claim. *Id.* Evanston, however, advised the Gabriels that it would be open to reevaluating its decision should new information or additional facts be presented, and it requested that such information be submitted in writing within 30 days. *Id.* The Gabriels did not cash the check. Ex. F to Resp. Instead, over the ensuing six months, the Gabriels disputed the contents of Evanston's engineering and appraisal reports while simultaneously effectively ignoring Evanston's repeated requests for documentation supporting the Gabriels' competing claim. *See* Exs. F-G to Resp; s*ee also* Affidavit of Anthony Dipietra ¶¶ 11-15. Accordingly, on April 18, 2017, a year after the Gabriels originally tendered their claim, Evanston informed the Gabriels that it had re-closed its file. *See* Ex. G to Resp.

On June 27, 2017, the Gabriels sent Evanston a formal demand and notice of their intent to sue Evanston for its alleged failure to promptly pay their hail-damage claim. Ex. H to Resp. The Gabriels asserted that they had suffered damages of at least $756,982.77 but, again, they did not provide any documentation to support the damages amount claimed. *Id.*; *see also* Dipietra Aff. ¶ 13.

On July 12, 2017, Evanston acknowledged receipt of the Gabriels' pre-suit notice but explained that the Gabriels had still failed to provide any information through which Evanston

3

could evaluate the Gabriels' damages figure. Evanston closed the letter by "reiterat[ing] its prior requests that the Gabriels provide documents and any other information upon which they are basing their claim." Ex I to Resp. Thereafter, the Gabriels retained new counsel who, by letter dated August 16, 2017, provided Evanston with a March 17, 2017 engineer report and a March 30, 2017 report from the Gabriels' independent adjustor that estimated the Gabriels sustained a total loss of $785,801.72. Ex. J to Resp. Evanston asserts, and the Gabriels do not dispute, that this was the first time any documentation was provided to Evanston to support the amounts claimed by the Gabriels. *See, e.g.*, Mot. at 3 (admitting that the engineer's report and appraisal estimate were not provided to Evanston until August 16, 2017).

On August 21, 2017, Evanston filed the instant suit against the Gabriels. Dkt. No. 1. Evanston seeks various forms of declaratory relief regarding its rights and obligations under the policy. It also seeks specific performance of the insurance policy's appraisal provision. Also on August 21, Evanston informed the Gabriels it was exercising its right to appraisal under the policy. Ex. L to Resp. Evanston filed is motion to compel the appraisal less than two months later. *See* Dkt. No. 11. The Gabriels, however, refuse to participate in the appraisal process, arguing that Evanston waived its right to invoke the appraisal clause by failing to timely invoke it. Dipietra Aff. ¶ 19; *see also* Resp. to Mot. to Comp. Appraisal. Pursuant to the policy, where the parties disagree regarding the value of the property or the amount of loss "either [party] may make written demand for an appraisal of the loss within 60 days after the receipt of proof of loss by [Evanston]." Par. 2.B of policy endorsement. According to the Gabriels, this 60-day period expired on November 19, 2016, 60 days after Evanston received their Sworn Statement in Proof of Loss and almost a year prior to Evanston's attempt to compel appraisal. Mot. at 15.

On August 28, 2017, seven days after Evanston filed suit, Gabriel Realty Partners filed suit in Bexar County District Court against Evanston and its appraiser, Brush County Claims,

Ltd. *See* Ex. A to Mot. In that litigation, Gabriel Realty asserts that Evanston improperly delayed and denied payment on the hail-damage claim. Gabriel Realty further claims Evanston colluded with Brush County Claims to ensure receipt of "biased" and "low-balled and result-oriented estimates on which Evanston can deny or under pay an insured's storm damage claims." *Id.* at 3. Gabriel Realty brings state law claims against Evanston and Brush County Claims for (1) breach of contract; (2) violation of Chapter 542 of the Texas Insurance Code; (3) violation of Section 17.46 of the Texas Deceptive Trade Practices Act; (4) unfair insurance practices; and (5) breach of the duty of good faith and fair dealing. Neither John nor Rosalie Gabriel is party to this state court action. Further, because both Gabriel Realty and Brush County claims are Texas citizens, Evanston cannot remove the state action to federal court. Citing the pendency of these state court proceedings, the Gabriels filed the instant Motion to Dismiss, Abstain, or Stay. Dkt. No. 15.

**II.     Analysis**

The Gabriels' argument here is that the Court must abstain (and dismiss the Complaint) under a rule of mandatory abstention stemming from the Anti-Injunction Act and, alternatively, that the Court should abstain or stay proceedings in its discretion under *Brillhart v. Excess Insurance Co. of America*, 316 U.S. 491 (1942).

To address these arguments, the Court must determine: "(1) whether [Evanston's] declaratory action is justiciable; (2) whether the [C]ourt has the authority to grant declaratory relief; and (3) whether to exercise its discretion to decide or dismiss [Evanston's] action." *Sherwin-Williams Co. v. Holmes County*, 343 F.3d 383, 387 (5th Cir. 2003). The propriety of a stay is addressed in the third part of this inquiry.

The parties do not take issue with the first part of the inquiry, whether Evanston's declaratory action is justiciable. They agree that it is, and so does the undersigned. There is here an actual, immediate controversy among the parties because, "under all the circumstances, . . . a

substantial controversy[] between parties having adverse legal interests[] of sufficient immediacy and reality to warrant the issuance of a declaratory judgment" is presented. *Rowan Companies, Inc. v. Griffin*, 876 F.2d 26, 28 (5th Cir. 1989) (quotations omitted).

At issue here, therefore, are the last two parts of the *Sherwin-Williams* inquiry. As to them, "[t]he ability of the district court to issue declaratory relief may be subject to either mandatory or discretionary abstention." *Sealed v. Sealed*, 33 F.3d 1379, 1994 WL 487245, at *1 (5th Cir. 1994). When a state suit is pending, "[m]andatory abstention attaches where

> (1) a declaratory defendant has previously filed a cause of action in state court against the declaratory plaintiff, (2) the state case involves the same issues as those involved in the federal case, *and* (3) the district court is prohibited from enjoining the state proceedings under the Anti-Injunction Act."

*Id.* at *1-2 (quoting *Travelers Ins. Co. v. Louisiana Farm Bureau Fed'n, Inc*., 996 F.2d 774, 776 (5th Cir. 1993)) (emphasis in original). Accordingly, these three factors are addressed to resolve the second part of the inquiry: whether the Court must abstain and dismiss the action or whether it instead has the authority to grant the requested declaratory relief.

"The absence of any of the three factors defeats mandatory abstention." *Id.* (citing *Torch, Inc. v. LeBlanc*, 947 F.2d 193, 194 (5th Cir. 1991)). If mandatory abstention is ruled out, the Court must then move on to the third part of the *Sherwin-Williams* inquiry and determine whether discretionary abstention (or a stay and abatement) is appropriate under the circumstances.

*Mandatory Abstention and the Court's Authority to Grant Declaratory Relief*. The second part of the *Sherwin-Williams* inquiry involves analyzing the three factors governing mandatory abstention in this context. The first and second of these factors are not met here.

The first mandatory abstention factor is not met here because the "declaratory defendant[s]" (*i.e.*, the Gabriels) have not "*previously filed* a cause of action in state court against the declaratory plaintiff" (*i.e.*, Evanston). *Sealed*, 33 F.3d 1379, 1994 WL 487245, at *1

(emphasis added). Instead, it is undisputed that the Gabriels filed suit in state court seven days *after* Evanston initiated the underlying federal action.

The Gabriels, citing *Royal Insurance Company of America v. Quinn-L Capital Corp.*, 3 F.3d 877, 885-86 (5th Cir. 1993), argue that the Fifth Circuit has clarified that "the [Anti-Injunction] Act applies whenever a state suit is pending, regardless of when it was filed," except where the "federal suit is filed substantially prior to any state suits, significant proceedings have taken place in the federal suit, and the federal suit has neither the purpose nor the effect of overturning a previous state court ruling." Mot. at 4 n. 3, 5 and Repl. at 4. Because Evanston did not file this action "substantially prior" to the state suit and because no significant proceedings have taken place here, the Gabriels argue that the first mandatory abstention factor is met. *Id.* In advancing their argument, the Gabriels read too much into the 1993 decision in *Royal*.

There is ample post-*Royal* authority in this circuit reflecting that "filing sequence strictly matters" when determining whether mandatory abstention applies. *Gulf Offshore Logistics, LLC v. Norris*, No. CV 16-8247, 2016 WL 7097383, at *6 (E.D. La. Dec. 5, 2016) (citing *St. Paul Fire & Marine Ins. Co. v. Lupin*, 1994 WL 261935 (E.D. La. Jun. 3, 1994)). Many recent decisions indicate that when the state court suit is filed after the federal action, that fact alone defeats mandatory abstention. *See id.*; *GuideOne Nat'l Ins. Co. v. Bhav Harri, LLC*, No. 16-CV-00740, 2017 WL 3492216, at *3 (N.D. Tex. Aug. 15, 2017) (holding mandatory abstention not required because the federal declaratory judgment action was filed before the suit in state court commenced); *Tudor Ins. Co. v. Ocotillo Real Estate Investments I, LLC*, No. 3:14-CV-2689-N, 2015 WL 11120873, at *2 (N.D. Tex. Jan. 9, 2015) (noting, in case where state and federal actions were filed mere days apart, "[b]ecause the declaratory defendant . . . filed its state court action after Carriers filed the declaratory judgment action, mandatory abstention is not

required").[2] This conclusion is consistent with Fifth Circuit precedent, as thoroughly discussed in *Chevron U.S.A., Inc. v. Cureington*, No. CIV.A. 10-0764, 2011 WL 1085661, at *6 (W.D. La. Feb. 18, 2011), *report and recommendation adopted*, No. CIV.A. 10-0764, 2011 WL 1044639 (W.D. La. Mar. 21, 2011). Because all three factors must be met before abstention is mandatory, the failure of the first factor effectively ends the mandatory abstention inquiry. *See Sealed*, 33 F.3d 1379, 1994 WL 487245, at *1-*2; *AIX Specialty Ins. Co.*, 2013 WL 4603775, at *2.

Nevertheless, the state case here does not involve the same issues as the present federal litigation, which means the second factor is also not satisfied. In addition to Evanston, the later-filed state action names the appraiser and is brought by only one of the insureds. In other words, the state action involves allegations of unfair practices committed by Evanston *in conjunction with* the appraiser and only concerns Evanston's obligations with respect to Gabriel Realty. In contrast, the federal action involves Evanston's contractual obligations *with respect to each of the insureds* and also addresses whether the Gabriels can be compelled to participate in the appraisal process. Accordingly, although the issues in both cases are similar they are not the same, and the difference is significant here. *See, e.g.*, *Certain Underwriters, at Lloyds, London v. Shokrian*, No. 4:11-CV-00244, 2011 WL 4357187, at *3 (E.D. Tex. Aug. 26, 2011), *report and recommendation adopted*, 2011 WL 4357184 (E.D. Tex. Sept. 15, 2011) (state and federal suits did not involve same issues where the declaratory action involved more parties and issues); *cf.*

---

[2] *See also AIX Specialty Ins. Co. v. W. States Asset Mgmt*, No. 3:12-CV-4342-M, 2013 WL 4603775, at *2 (N.D. Tex. Aug. 29, 2013) ("Because Plaintiff filed this declaratory judgment action before Defendant filed its suit in state court, the Court need not abstain from deciding the declaratory judgment action."); *Smith v. McLean*, No. 4:10-CV-00792, 2011 WL 2792387, at *5 (S.D. Tex. Jul. 14, 2011) ("Because the plaintiff in the case *sub judice* filed the instant declaratory action in federal court before McLean, the declaratory defendant, ever sought relief in state court, mandatory abstention appears inapplicable here and this Court has authority to grant declaratory relief."); *Chevron U.S.A., Inc. v. Cureington*, No. 10-0764, 2011 WL 1085661, at *6 (W.D. La. Feb. 18, 2011), *report and recommendation adopted*, 2011 WL 1044639 (W.D. La. Mar. 21, 2011); *Colony Ins. Co. v. Holley*, No. CIV.A.02-56, 2002 WL 31683675, at *1 (E.D. La. Nov. 27, 2002).

*Little Giant Mfg. Co. v. Chromalox Indus. Heating Prods.*, No. 1:96-CV-44, 1996 WL 363026, at *5 (E.D. Tex. Jun. 26, 1996) (describing the state case as one that "address[es] identical issues").

For these reasons, abstention is not mandatory, and the Court has authority to grant declaratory relief. The request to dismiss the federal action on mandatory abstention grounds should therefore be denied.

*Discretionary Abstention or a Stay*. Whether discretionary abstention may be appropriate depends on the type of relief sought. *New England Ins. Co. v. Barnett*, 561 F.3d 392, 394 (5th Cir. 2009). "When a district court is considering abstaining from exercising jurisdiction over a declaratory judgment action, it must apply the standard derived from *Brillhart v. Excess Insurance Co. of America*[, 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942)]." *Id.* (quotation marks omitted). Conversely, "when an action involves coercive relief, the district court must apply the abstention standard set forth in *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976)." *Id.* Where a plaintiff seeks both declaratory and coercive relief, *Colorado River* abstention applies unless the claims for coercive relief are frivolous or were added as a means of defeating *Brillhart*. *Id.* at 395-96.

In addition to requesting declaratory relief, Evanston seeks specific performance by way of a court order compelling the Gabriels to honor the policy's appraisal provision. The Gabriels do not dispute that Evanston seeks coercive relief[3] or contend (directly) that Evanston's claim was added solely for the purpose of sidestepping *Brillhart*. Rather, the thrust of the Gabriels' argument is that Evanston's claim for appraisal is frivolous because Evanston did not invoke its

---

[3] *See also Perez v. Ledesma*, 401 U.S. 82, 112 (1971) (distinguishing a declaratory judgment from a "decree for damages, injunction, specific performance, or other immediately coercive decree"); *Michigan S. R.R. Co. v. Branch & St. Joseph Ctys. Rail Users Ass'n., Inc.*, 287 F.3d 568, 575 (6th Cir. 2002) (classifying a suit for specific performance as a "coercive action.").

9

appraisal rights within 60 days after receiving the Gabriels' Sworn Proof of Loss, as mandated by the policy. *See* Mot. at 7-8.

Other than in instances where a court lacks jurisdiction to grant the requested relief, *see Trent v. Nat'l City Bank of Indiana*, 145 Fed. App'x 896, 898 (5th Cir. 2005), the Fifth Circuit does not appear to have explained when a coercive claim ought to be deemed frivolous. Borrowing on the *in forma pauperis* standard, at least one district court in this circuit has concluded that a coercive claim is frivolous where the claim "lacks an arguable basis in law or fact." *See Accident Ins. Co., Inc. v. Blanchet*, No. CIV.A. 13-0387, 2013 WL 3868091, at *5 (W.D. La. Jul. 22, 2013).

The insurance policy here contains an appraisal provision that purports to govern the parties' obligations in the event of a loss. *See* Policy Par. E.2; Par. B.2 of Endorsement. "In Texas, enforcement of appraisal clauses is strongly favored." *Alvarado v. State Farm Lloyds*, No. 7:14-CV-166, 2015 WL 12778684, at *3 (S.D. Tex. May 18, 2015). The Gabriels do not dispute the provision's general enforceability, and it is their burden to prove waiver of the provision by Evanston. *JM Walker LLC v. Acadia Ins. Co.*, 356 Fed. App'x 744, 748 (5th Cir. 2009) ("Under Texas law, waiver is an affirmative defense, and the party seeking to defeat appraisal bears the burden of proof."). The burden is a heavy one. *Baylor Coll. of Med. v. Am. Guarantee & Liab. Ins. Co.*, No. CV H-02-1711, 2004 WL 7331816, at *6 (S.D. Tex. Mar. 31, 2004) (quotation marks omitted) ("There is a strong presumption against a finding that a party has waived its right to appraisal; the burden to prove waiver is [ ] a heavy one.").

There is reason to believe that until August 16, 2017, Evanston lacked necessary information about the Gabriels' claimed amount of damages. A "waiver" under Texas law involves a "voluntary, intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right." *First Interstate Bank of Arizona, N.A. v. Interfund Corp.*,

924 F.2d 588, 595 (5th Cir. 1991). Whether and to what extent Evanston's lack of full and complete information might impact its ability to waive (or not) a contractual right to appraisal is an open question at this time. Evanston's request to compel an appraisal, however, does appear to satisfy Rule 8(a). *See* Fed. R. Civ. P. 8(a)(2), (c)(1) (defining "[c]laim showing that the pleader is entitled to relief" separately from an "avoidance or affirmative defense"); Wright & Miller, 5 Fed. Prac. & Proc. Civ. § 1276 (3d ed.) (recognizing that pleading "allegations that seek to avoid or defeat a potential affirmative defense . . . are not an integral part of the plaintiff's claim for relief and lie outside his or her burden of pleading"). Thus, whether the Gabriels can ultimately prove Evanston knowingly waived its appraisal right under the policy is an unresolved merits-type inquiry that does not inform the undersigned's frivolousness analysis.

It cannot fairly be said, however, that Evanston's arguments to compel specific performance of its asserted right to appraisal are frivolous. The Gabriels' arguments to the contrary invoke the policy's plain text, which requires a demand for an appraisal within 60 days after the "receipt of proof of loss." The problem for this argument in the context of a frivolousness analysis, however, is that the phrase "proof of loss" is not defined in the policy. According to Evanston, "proof of loss" has been interpreted in analogous situations to require supporting documentation so that an insurer can evaluate the claimed damage. *See* Mot. to Comp. Apprais. at 7-8. Documentation was not provided here until August 16, 2017, which raises a question concerning when "proof of loss" was provided by the Gabriels. *See id*. There was also arguably a revised demand for payment here, which came in the form of a slightly revised figure from the Gabriels and supported by documentation, something that had not been forthcoming before August 16, 2017. Ultimately, whether Evanston waived its rights to the appraisal involves too many open issues at this point, and it is an issue better addressed at a later

11

date. In any event, the undersigned cannot say at this juncture that Evanston's claimed entitlement to an appraisal is so weak that it is frivolous.

Because Evanston has stated a non-frivolous claim for coercive relief and there is no convincing reason presented by the Gabriels to conclude that Evanston brought the claim merely to avoid *Brillhart*, the Court will apply the *Colorado River* abstention standard. *See New England*, 561 F.3d at 395. "*Colorado River* abstention is a narrow exception to a federal court's 'virtually unflagging' duty to adjudicate a controversy that is properly before it." *African Methodist Episcopal Church v. Lucien*, 756 F.3d 788, 797 (5th Cir. 2014) (quoting *Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 16 (1983) and citing *Colorado River*, 424 U.S. at 813). It permits a federal court to abstain from hearing a case only under "exceptional circumstances," based on considerations of "[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Id.* (quoting *Colo. River*, 424 U.S. at 817). The burden is on the Gabriels to establish the propriety of abstention here. *Turner v. Pavlicek*, No. CIV.A. H-10-00749, 2011 WL 4458757, at *4 (S.D. Tex. Sept. 22, 2011) (collecting authorities).

As a threshold matter, *Colorado River* abstention is only proper where state and federal proceedings are "parallel." *African Methodist*, 756 F.3d at 797. A parallel action is one "involving the same parties and the same issues," although "it may be that there need not be applied in every instance a mincing insistence on precise identity of parties and issues." *Id.* (quotation marks omitted). In determining whether an action is parallel, courts look to the "named parties and to the substance of the claims asserted in each proceeding." *Id.* As discussed above, this case does not involve the same named parties. And, while the subject matter overlaps, the state and federal actions involve some disparate issues. Accordingly, the cases do not appear parallel. *See Am. Family Life Assur. Co. of Columbus v. Biles*, 714 F.3d 887, 892 (5th Cir. 2013)

(state and federal suits not parallel where state action involved different defendants and issues not involved in the federal action); *RepublicBank Dallas Nat'l Assoc. v. McIntosh*, 828 F.2d 1120, 1121 (5th Cir. 1987) (federal and state litigation involving same general subject matter, with one common issue, but involving other disparate issues and different parties not parallel under *Colorado River*); *Rowley v. Wilson*, 200 Fed. App'x 274, 275 (5th Cir. 2006) (state suit not parallel where federal suit had additional defendants with additional claims against those defendants). Ultimately, however, because a stay is not justified under the six-factor *Colorado River* analysis, the Court need not decide whether the suits are sufficiently parallel to warrant abstention under *Colorado River*. *See Stewart v. W. Heritage Ins. Co.*, 438 F.3d 488, 493 (5th Cir. 2006) (where abstention is prohibited by *Colorado River* factors, court need not decide whether actions are parallel).

"Exceptional circumstances" do not exist here to warrant application of *Colorado River* abstention. In determining whether "exceptional circumstances" for purposes of Colorado River, courts consider the following six factors: "(1) assumption by either state or federal court over a res; (2) relative inconvenience of the fora; (3) avoidance of piecemeal litigation; (4) order in which jurisdiction was obtained by the concurrent fora; (5) extent federal law provides the rules of decision on the merits; and (6) adequacy of the state proceedings in protecting the rights of the party invoking federal jurisdiction." *Brown v. Pac. Life Ins. Co.*, 462 F.3d 384, 395 (5th Cir. 2006). "[T]he decision whether to dismiss a federal action because of parallel state-court litigation does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Id.* (quoting *Moses H. Cone*, 460 U.S. at 16). "'[O]nly the clearest of justifications' will warrant the federal courts staying of hand" under *Colorado River*. *McIntosh*, 828 F.2d at 1121 (quoting *Colorado River*, 424 U.S. at 819).

Factor one: the assumption of control by the court over a res. This case does not involve any res or property over which any court, state or federal, has taken control. *C.f. Colo. River*, 424 U.S. at 819 ("[T]he concern in such instances is with avoiding the generation of additional litigation through permitting inconsistent dispositions of property."). The absence of this factor weighs against abstention. *See Stewart*, 438 F.3d 488, 492 (5th Cir. 2006) (citing *Evanston Ins. Co. v. Jimco, Inc.*, 844 F.2d 1185, 1191 (5th Cir. 1988) and *Murphy v. Uncle Ben's, Inc.*, 168 F.3d 734, 738 (5th Cir. 1999)).

Factor two: the relative inconvenience of the federal forum: The primary focus of this factor is on the "physical proximity of the federal forum to the evidence and witnesses." *Evanston*, 844 F.2d at 1191. Where the state and federal courthouses hearing the suits are in the same city, as is the case here, the inconvenience factor weighs against abstention and in favor of exercising federal jurisdiction. *See Stewart,* 438 F.3d at 492.

Factor three: avoiding piecemeal litigation. "The pendency of an action in state court does not bar a federal court from considering the same matter." *Stewart*, 438 F.3d at 492. "While duplicative litigation is permitted, *Colorado River* prevents *piecemeal* litigation, and the concomitant danger of inconsistent rulings." *Id.* (emphasis in original) (internal quotations omitted). The potential does exist here for some piecemeal litigation. Both cases concern Evanston's obligation to pay the Gabriels' April 2016 hail-damage claim under the policy, and the state court is the only forum hearing the unfair-competition claims against the appraiser. When evaluating this factor, however, courts consider whether "the state court action is able to resolve all of the claims involved in a dispute with respect to all of the parties involved while the federal action is able to resolve the dispute only partially." *Saucier v. Aviva Life & Annuity Co.*, 701 F.3d 458, 465 (5th Cir. 2012). If these circumstances exist, abstention is favored. *Id.* This is not the case here. Because two of the named insureds, John and Rosalie Gabriel, have not joined

14

in the state court action, the state court cannot resolve all coverage issues. "Nonetheless, as the litigation presently exists, the third factor favors abstention." *Stewart*, 438 F.3d at 492 (third factor favored abstention where the potential existed for piecemeal litigation).

The Gabriels also note the potential inefficiencies and increase in costs of maintaining two different suits. *See* Repl. at 6. But "[t]his analysis appears to confuse piecemeal litigation with duplicative litigation. The concern with piecemeal litigation arises primarily where parallel lawsuits pose[ ] a risk of inconsistent outcomes not preventable by principles of res judicata and collateral estoppel." *Saucier*, 701 F.3d at 464 (quotations omitted).

<u>Factor four: the order in which jurisdiction was obtained by the concurrent fora</u>. Here, it is undisputed that Evanston filed suit first. This factor, however, "should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *Evanston*, 844 F.2d at 1190 (quoting *Moses H. Cone*, 460 U.S. at 21). "For this factor to weigh in favor of abstention, a movant must show not only that the suit in federal court has not progressed, but also that the state action has progressed substantially." *Emke v. Compana LLC*, No. CIV A 306CV1416-O BH, 2009 WL 1838976, at *5 (N.D. Tex. Jun. 22, 2009) (collecting authorities). The Gabriels have not made any such showing. According to the Gabriels, Evanston filed its state court answer on October 2, 2017, and in it sought a plea in abatement. Ex. C to Mot. The Gabriels also assert that the Bexar County court has a Standing Order on Commercial Hail Claims, Ex. B to Mot., which requires an early exchange of information and mediation. But the Gabriels have failed to provide any meaningful additional information regarding the status of the state court suit. Absent the required showing that the state court action has progressed substantially further than this one, this factor weighs against abstention. *See Black Sea Inv., Ltd. v. United Heritage Corp.*, 204 F.3d 647, 651 (5th Cir. 2000)

("As the state and federal suits are proceeding at approximately the same pace, this factor weighs against abstention.").

Factor five: the extent to which federal law provides the rules of decision on the merits. "The presence of a federal law issue 'must always be a major consideration weighing against surrender [of jurisdiction],' but the presence of state law issues weighs in favor of surrender only in rare circumstances." *Evanston*, 844 F.2d at 1193 (quoting *Moses H. Cone*, 460 U.S. at 26). This diversity case involves only merits issues under state law. Nonetheless, the Gabriels have failed to show that "rare circumstances" exist and thus this factor is "at most neutral." *Stewart*, 438 F.3d at 493.

Factor six: the adequacy of state court proceedings in protecting the rights of the party invoking federal jurisdiction.

In discussing this final factor, the Supreme Court has explained:

> When a district court decides to dismiss or stay under *Colorado River*, it presumably concludes that the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties. If there is any substantial doubt as to this, it would be a serious abuse of discretion to grant the stay or dismissal at all. Thus, the decision to invoke *Colorado River* necessarily contemplates that the federal court will have nothing further to do in resolving any substantive part of the case, whether it stays or dismisses.

*Murphy*, 168 F.3d at 739 (quoting *Moses H. Cone*, 460 U.S. at 28) (citations omitted).

Given that not all of the insureds have been joined in the state court action, the undersigned doubts that the state court proceedings will be an adequate vehicle for Evanston to resolve all coverage issues. But assuming without deciding that the Gabriels are correct in their asserted belief that res judicata would still bar coverage claims brought by the other two insureds, this factor would at best be neutral. *Id.* (explaining that the sixth factor "can only be 'a neutral factor or one that weighs against, not for, abstention'") (quoting *Evanston*, 844 F.2d at 1193).

Balancing of factors weighs against abstention or a stay. With the exception of the factor considering "piecemeal litigation," the majority of the *Colorado River* factors weigh against abstention (factors one, two, and four) and the remainder are neutral (factors five and six). "Federal courts have a 'virtually unflagging obligation . . . to exercise the jurisdiction given them,' even if this results in seemingly wasteful duplicative litigation." *Saucier*, 701 F.3d at 465 (quoting *Colorado River*, 424 U.S. at 817). Accordingly, there are no "exceptional circumstances" warranting a stay or the dismissal of this litigation in favor of the pending state court proceedings. *See Transocean Offshore USA, Inc. v. Catrette*, 239 Fed. App'x 9, 13 (5th Cir. 2007) (finding district court abused its discretion in staying federal litigation when avoidance of piecemeal litigation was only factor weighing in favor of abstention).

### III. Conclusion

For the reasons discussed above, it is recommended that the District Court **DENY** the Gabriels' Motion to Dismiss, Abstain, or Stay, Dkt. No. 15.

**Instructions for Service and Notice of Right to Object/Appeal**

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy by certified mail, return receipt requested, to those not registered. Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The objecting party shall file the objections with the clerk of the court, and serve the objections on all other parties. A party filing objections must specifically identify those findings, conclusions, or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusory, or general objections. A party's failure to

file written objections to the proposed findings, conclusions, and recommendations contained in this report shall bar the party from a *de novo* determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149-52 (1985); *Acuña v. Brown & Root, Inc.,* 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to timely file written objections to the proposed findings, conclusions, and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**IT IS SO ORDERED.**

SIGNED this 6th day of June, 2018.

_____
RICHARD B. FARRER
UNITED STATES MAGISTRATE JUDGE